UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:25-cv-00721

| | |
|---|---|
| BRIANA GLASS, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) **COMPLAINT and JURY TRIAL**<br>) **DEMAND** |
| TYSON FOODS, INC., | )<br>) |
| Defendant. | )<br>) |

Plaintiff, Briana Glass ("Glass"), by and through counsel, brings this action against her former employer, Tyson Foods, Inc. ("Defendant") for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, against Tyson Foods, Inc. ("Defendant") and wrongful discharge in violation of public policy.

## NATURE OF GLASS' CLAIMS

1. This action arises from Defendants' unlawful discrimination and retaliation against Glass because of her disability, namely severe anxiety and depression. On or about March 10, 2025, Defendant denied Glass' request for a reasonable accommodation to attend a work conference virtually after her disability was triggered by repeated flight delays due to mechanical issues.

2. Defendant subsequently terminated Glass's employment on April 25, 2025, the very day she was scheduled to return to work from approved FMLA leave taken for her serious health condition. Defendants' stated reason for termination—that Glass was untruthful about the

cause of the flight delay—was a pretext for disability discrimination, FMLA interference, and retaliation.

3. Despite Glass providing Defendant with documentation from the airline confirming that the flight delay was, in fact, due to mechanical issues, Defendant refused to rescind the termination. Defendants' actions constitute unlawful disability discrimination, failure to accommodate, and retaliation in violation of the ADA; interference and discrimination in violation of the FMLA; and wrongful discharge in violation of the public policy of the State of North Carolina.

## THE PARTIES

2. Glass is an adult individual who is a resident of Charlotte, North Carolina.

3. Defendant is a corporation organized under the laws of Delaware with its principal place of business located in Springdale, Arkansas. At all relevant times, Defendant maintained facilities throughout the United States, including the Monroe Plant facility that is the subject of this lawsuit, which is located at 2023 Hasty St, Monroe, NC 28112.

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 over the subject matter of the claims brought in violation of the ADA and the FMLA.

5. Glass' wrongful discharge in violation of public policy claims are based on the laws of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of facts giving rise to Glass' ADA and FMLA claims.

6. This Court has personal jurisdiction because Defendant conducts business in North Carolina, the acts or omissions giving rise to Glass' Complaint occurred in North Carolina, and it is reasonably foreseeable for Defendant to expect to be called into court in this judicial district.

7. Venue is proper in this judicial district because Defendant has substantial business contacts in this district and because the unlawful acts or omissions alleged herein occurred in Union County, North Carolina, which is within the Western District of North Carolina.

## **COVERAGE ALLEGATIONS**

8. At all times relevant to this action, Glass was a "qualified individual" covered by the protections of the ADA, as amended, within the meaning of 42 U.S.C. § 12111(8).

9. At all relevant times, Defendant was a "covered entity" engaged in an industry affecting commerce and had at least fifteen (15) or more employees each working day.

10. At all relevant times, Glass was an "employee" within the meaning of 42 U.S.C. § 12111(4).

11. Defendant is an "employer" within the meaning of 42 U.S.C. § 12111(5).

12. At all relevant times, Defendant has been an "employer" within the meaning of the FMLA, in that Defendant employs fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year, 29 U.S.C. § 2611(4).

13. At all relevant times, Glass was an "eligible employee" within the meaning of the FMLA, in that she was employed by Defendant for at least twelve (12) months and performed at least 1,250 hours of service with Defendant during the twelve-month period preceding her leave and subsequent termination from employment, 29 U.S.C. § 2611(2).

14. Glass satisfied her obligation to exhaust her administrative remedies by timely filing Charges of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation based on disability. On June 23, 2025, the EEOC issued a Notice of Suit Rights and Glass timely brings this action within ninety (90) days of her receipt thereof.

## FACTUAL ALLEGATIONS

### Glass' Disability

16. On or about March 14, 2024, Glass was diagnosed with severe anxiety and depression.

17. Glass' severe anxiety and depression are medical conditions that constitute disabilities within the meaning of the ADA. Although often treatable conditions, anxiety and depression can be considered chronic.

18. As a result of her disability, Glass experiences panic attacks and depressive states that substantially limit her ability to perform major life activities including, but not limited to, working, interacting with others, communicating, thinking, caring for herself, eating, and sleeping.

### Glass' Employment with Defendant

19. Defendant operates a poultry processing facility in Monroe, North Carolina, located at 2023 Hasty St, Monroe, NC 28112 (the "Monroe Plant"). The Monroe Plant employs more than 501 employees and is part of Defendant's Raw Poultry Division.

20. On May 1, 2023, Defendant hired Glass as a Human Resource Partner at the Monroe Plant. Defendant lists the job details of a Human Resource Partner to include:

> The HR Partner will execute a strategy to optimize human capital that contributes to the achievement of business unit objectives. In close partnership with People Operations and the COEs, this position will partner with leadership on creating a safe environment for our team and leverage our Employee Value Proposition. This

4

position will focus on the retention and development of our team members while also driving business results.

21. Defendant lists the responsibilities of the HR Partner to include:

Provide input and implement HR strategy to drive the organization's vision[.] Assist in the development and implementation of plans and programs to ensure the most effective utilization of HR[.] Influence team member behavior to promote key safety and HR principles[.] Identify and correct risk generating patterns in EEOC and AA using available resources[.] Champion EID initiatives[.] Build team member networks that promote feedback to be used in corrective scenarios where adverse business conditions exist[.] Effectively identify patterns of behavior which may lead to team member dissatisfaction and focus on strategy to eliminate[.] Provide coaching to support leadership development and decision making to drive performance productivity[.] Partner coaching to support leadership development and decision making to drive performance productivity[.] Partner closely with COE and People Operations on the design and implementation of onboarding and orientation experience for new team members[.] Work with leaders to determine workforce strategy and partner with COEs and People Operations for execution[.] Management of grievances and partner closely with LR COE to identify and communicate potential violations of contract/CBAs[.] Play an active role in the evaluation of talent and development[.] Monitor success of program and policies against ROI targets and adjust as team member experience and business requirements dictate[.] Implement programs that are innovative and keep the workforce ready for the future while successfully addressing business needs[.] Support EVP and talent enablement process improvements by identifying and communicating opportunities and providing input to potential solutions.

22. At all relevant times during her employment, Glass met or exceeded Defendant's legitimate employment expectations in her role as Human Resource Partner, as evidenced by, among other things, a merit-based salary increase which she received in December 2024, positive performance evaluations, and no disciplinary actions before her termination.

23. During her employment, Glass initially reported to Roberto Barragan Jr. ("Barragan"), Defendant's Strategic HR Partner, until his employment ended. When Barragan's employment ended, Amy Ford ("Ford"), Defendant's Area HR Director, and LaMesha Huntley ("Huntley"), Defendant's Area HR Partner, served as Glass' direct supervisors.

24. On March 10, 2025, Glass was scheduled to travel via airplane to attend a mandatory team conference for Defendant. Glass' flight, America Airlines flight AA2570, was delayed multiple times for what she was told were mechanical issues.

25. The repeated flight delays and concerns over mechanical issue triggered Glass' anxiety disability. As a result, on March 10, 2025, Glass texted Ford and asked "Is there a way to do the conference through [MS] Teams? The plane has been delayed multiple times for mechanical issues and its making me really anxious. I don't think I can go."

26. Ford summarily denied Glass' request for a reasonable accommodation, replying via text message: "No ma'am there's no teams."

27. The following day, Ford sent Glass another text message stating, "That's disappointing Tyre and the rest of the team found a different flight. This was a mandatory team conference & you were expected to be here," showing a complete disregard for Glass' disability accommodation needs.

28. On March 11, 2025, Glass texted Ford "I didn't make the flight last night. Seeing that I cannot participate through [MS T]eams I will just report to work as usual. I know you would like for everyone to be there physically I just could not. It was a lot [for] me."

29. On March 11, 2025, Glass' symptoms worsened, and she called her doctor due to symptoms including rapid heartbeat and chest tightness related to her anxiety condition.

30. On March 12, 2025, Glass told James Parker ("Parker"), Defendant's Chaplain at the Monroe facility, about what occurred with the plane's mechanical issues and how she was feeling. Parker recommended Glass contact Defendant's Employee Assistance Program ("EAP"). After speaking with Parker, Glass contacted Defendant's EAP setting up a therapy appointment.

31. On March 13, 2025, Glass went to urgent care and was diagnosed with anxiety and prescribed medication for her condition.

32. On or about March 12 or 13, 2025, Parker telephoned Glass and asked for her consent to share details of their conversation with Ford. Glass responded affirmatively. Upon information and belief, Parker informed Ford about her anxiety and his recommendation that Glass contact Defendant's EAP.

33. On March 14, 2025, Glass visited her doctor and was diagnosed with severe anxiety and depression and was written out of work until March 31, 2025. Glass properly notified Defendant and applied for leave through Sedgwick, Defendants' third-party leave administrator. Glass' leave was approved as qualifying under the FMLA from March 12, 2025 through April 24, 2025.

34. On April 25, 2025, the date Glass was scheduled to return from her FMLA leave for anxiety and depression, Ford and Huntley terminated Glass' employment over the phone.

35. Defendant's stated reason for termination was that Glass had violated the Standards of Behavior Policy by being "untruthful with communications regarding the plane delay" on March 10, 2025.

36. Defendant's stated reason for termination was pretextual. On or about April 28 or 29, 2025, American Airlines provided Glass proof that flight AA2570 on March 10, 2025 was "delayed for 307 minutes due to Flight Crew and Mechanical issues," proving that Glass had been completely truthful about the flight delays.

37. On May 8, 2025, Glass filed a complaint with Defendant's ethics department and sent an email to John Roller ("Roller"), Defendant's Strategic HR Partner, Ford, Huntley, and

Stephens. Glass did not receive a response from any of Defendant's representative, except for Roller—who emailed Glass requesting a meeting with Glass for May 20, 2025.

38. On May 20, 2025, Glass shared the proof she received from American Airlines with Roller.

39. Despite Glass providing documentation to Roller that proved her truthfulness and completely contradicted Defendant's stated reason for termination, Defendant refused to reinstate her employment.

40. As a direct and proximate result of Defendant's unlawful conduct, Glass suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

**FIRST CAUSE OF ACTION**
**(Violation of the ADA – Discrimination)**

32. Glass realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

33. Glass was disabled in that she had mental impairments, namely severe anxiety and depression, that substantially limited one or more major life activities, including but not limited to working, interacting with others, communicating, thinking, caring for herself, eating, and sleeping.

34. At all times relevant to this Complaint, Glass was a qualified individual able to perform the essential functions of her job with or without accommodation.

35. Defendant discriminated against Glass by terminating her employment on April 25, 2025, because of her disability.

36. The timing of Glass' termination—occurring on the very day she was scheduled to return from approved medical leave for her disability—and the pretextual nature of Defendant's

stated reason for termination demonstrate that Defendant's decision was motivated by Glass' disability.

37. As an actual, proximate, and foreseeable result of Defendant's discriminatory actions, Glass has suffered and continues to suffer damages including, but not limited to, lost back and front pay, loss of benefits associated with her employment, emotional distress, mental anguish, humiliation, and other compensatory damages.

## SECOND CAUSE OF ACTION
**(Violation of the ADA – Failure to Accommodate)**

38. Glass realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

39. Defendant knew of Glass' disability of anxiety at the time she requested an accommodation on March 10, 2025.

40. Glass requested a reasonable accommodation for her disability when she asked to attend the mandatory team conference virtually due to her anxiety being triggered by repeated flight delays.

41. Attending the conference virtually was a reasonable accommodation that would have allowed Glass to perform the essential functions of her job and would not have imposed an undue hardship on Defendant.

42. Defendant failed and refused to provide Glass with a reasonable accommodation for her disability, instead summarily denying her request.

43. As an actual, proximate, and foreseeable result of Defendant's failure to accommodate, Glass has suffered and continues to suffer damages including, but not limited to, emotional distress, mental anguish, humiliation, and other compensatory damages.

## THIRD CAUSE OF ACTION
### (Violation of the ADA – Retaliation)

44. Glass realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

45. Glass engaged in activity protected by the ADA by requesting a reasonable accommodation for her disability on March 10, 2025.

46. Defendant retaliated against Glass for engaging in protected activity by subjecting her to an adverse employment action, namely terminating her employment.

47. A causal connection exists between Glass' protected activity and her termination, as Defendant used the incident surrounding her accommodation request as the pretextual basis for her discharge.

48. As an actual, proximate, and foreseeable result of Defendant's retaliatory actions, Glass has suffered and continues to suffer damages including, but not limited to, lost back and front pay, loss of benefits associated with her employment, emotional distress, mental anguish, humiliation, and other compensatory damages.

## FOURTH CAUSE OF ACTION
### (Violation of the FMLA – Interference)

49. Glass realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

50. Defendant unlawfully interfered with Glass' rights as protected by the FMLA by terminating her employment on April 25, 2025, the exact date she was scheduled to be reinstated from her approved FMLA leave, thereby denying her the right to be restored to her position.

51. Defendant's actions were intentional, willful, and/or undertaken with reckless disregard for Glass' rights under the FMLA.

52. As an actual, proximate, and foreseeable result of Defendant's actions, Glass suffered lost back and front pay, benefits associated with her employment, and other actual monetary losses sustained as a direct result of the violation.

## FIFTH CAUSE OF ACTION
### (Violation of the FMLA – Discrimination/Retaliation)

53. Glass realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

54. Defendant unlawfully discriminated and retaliated against Glass by terminating her employment because she exercised her right to take FMLA-protected leave for her serious health condition.

55. The timing of Glass' termination on the exact date of her scheduled return from FMLA leave, combined with the pretextual nature of the stated reason for termination, demonstrates that Defendant's decision was motivated by her use of FMLA leave.

56. Defendant's actions were intentional, willful, and/or undertaken with reckless disregard for Glass' rights under the FMLA.

57. As an actual, proximate, and foreseeable result of Defendant's actions, Glass suffered lost back and front pay, benefits associated with her employment, and other actual monetary losses sustained as a direct result of the violation.

## SIXTH CAUSE OF ACTION
### (Wrongful Discharge in Violation of Public Policy)

58. Glass realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

59. The public policy of the State of North Carolina as set forth in N.C.G.S. § 168A *et seq.*, North Carolina's Persons With Disabilities Protection Act, prohibits employers from

discriminating against employees on the basis of their disability. Glass is disabled and is therefore a member of a protected class. This is specifically established in N.C. Gen. Stat. § 168A *et seq.*

60. Defendant violated the public policy of North Carolina as set forth in N.C.G.S. § 168A *et seq.*, by terminating Glass, a member of the protected class, on the basis of her disability.

61. As a proximate and foreseeable result of Defendant's conduct, Glass has suffered lost back and future wages and benefits, expenses, and other damages, which she seeks from Defendant.

62. Defendant's actions were done maliciously, willfully, or wantonly or in a manner that demonstrates a reckless disregard for Glass' rights. As a result of Defendant's conduct, Glass is entitled to recover punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Glass demands the following relief:

a. A Declaration and finding that Defendant willfully violated provisions of the ADA by discriminating against Glass because of her disability;

b. A Declaration and finding that Defendant willfully violated provisions of the ADA by failing to provide reasonable accommodations for Glass' disability;

c. A Declaration and finding that Defendant willfully violated provisions of the ADA by retaliating against Glass because she requested reasonable accommodations for her disability;

d. A Declaration and finding that Defendant willfully violated provisions of the FMLA by interfering with Glass' rights as protected by the FMLA;

e. A Declaration and finding that Defendant willfully violated provisions of the FMLA by discriminating against Glass because she exercised her right to take FMLA leave;

f. An Order requiring Defendant to pay Glass for all lost wages and employment benefits from the day Defendant terminated her employment until the day of final judgment;

g. An Order requiring Defendant to reinstate Glass to her former position or award front pay in lieu thereof;

h. An Order requiring Defendant to pay Glass compensatory damages for emotional distress, mental anguish, and other non-economic losses;

i. An Order requiring Defendant to pay Glass punitive damages;

j. An Order requiring Defendant to pay Glass all attorneys' fees, litigation expenses, and costs incurred as a result of bringing this action;

k. An Order requiring Defendant to pay Glass pre- and post-judgment interest at the highest rates allowed by law on all sums recoverable; and

l. An Order granting such other and further relief as may be necessary and proper.

## JURY TRIAL DEMAND

Glass hereby demands a trial by jury on all issues so triable.


Respectfully submitted,

/s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Suite 325

Charlotte, North Carolina 28277
Telephone: (704) 612-0038
E-Mail: phil@gibbonslg.com
corey@gibbonslg.com

*Attorneys for Plaintiff*